IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–00876–PAB–KMT

KEVIN TAYLOR,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

Before the court is Defendant's "Motion to Dismiss." (["Motion"], Doc. No. 12.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 15; ["Reply"], Doc. No. 18.) For the following reasons, it is RECOMMENDED that the Motion be GRANTED.

### STATEMENT OF THE CASE

*Pro se* Plaintiff Kevin Taylor ["Mr. Taylor," or "Plaintiff"], a military veteran, brings this lawsuit under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 2671-2680, asserting four claims against the United States of America ["Defendant"] arising from his allegedly inadequate treatment by Department of Veterans Affairs ["VA"] medical providers. (["Complaint"], Doc. No. 2.)

### I. *Mr. Taylor's Allegations*

According to the Complaint, at some point in 2017, a VA physician prescribed Mr. Taylor with an anti-depressant medication, Lexapro, for unspecified psychiatric symptoms. (*Id.* at 4.) Within days of starting the medication, Mr. Taylor reportedly began to experience intolerable "sexual side-effects." (*Id.*) Mr. Taylor now complains that, even though he made repeated demands to "change" the medication, the VA ultimately "held [him] hostage to taking [Lexapro] for three months," until he "was finally assigned to an empathetic doctor" who "immediately" switched him to a different drug. (*Id.*) However, Mr. Taylor's "sexual" symptoms apparently "persisted," even after the medication change, and he was eventually seen by "an outside urologist," who diagnosed him with "low testosterone," as well as "Post Serotonin reuptake inhibitor Sexual Disfunction (PSSD)." (*Id.*) Four years since these events transpired, Mr. Taylor reportedly "still suffer[s] the loss of functioning," and he claims that he will likely "remain impotent" for the remainder of his life. (*Id.*) Plaintiff laments that his present medical condition has "complicated and prevented relationships, deflated [his] confidence, utterly emasculated [him], negatively impacted [his] quality of life, and provoked more thoughts of suicide." (*Id.*)

In this lawsuit, Mr. Taylor also complains that, after he was prescribed an erectile dysfunction ["ED"] medication to treat his aforementioned "sexual side-effects," a VA nurse approached him "in a lobby" and "proceeded to talk about the ED medication, what it was for, how to use it, when to use it, etc. at full volume in front of everyone in the lobby." (*Id.* at 5.) Mr. Taylor reports that he "yelled at [the VA nurse] to shut up," and then "walked away." (*Id.*) He claims that he was then escorted from the building by the police and issued a citation, after

2

the VA nurse with whom he was speaking falsely "accused" him of "throw[ing] a chair" at her. (*Id.*) Plaintiff alleges that these events made him feel "extremely humiliated," and exacerbated his pre-existing PTSD symptoms. (*Id.*)

Mr. Taylor also alleges that, to date, "the VA persists to aggravate injuries and leave [him] without care either from neglect or the mishandling of authorizations for provisions." (*Id.* at 6.) Plaintiff recounts instances in which he has had to wait up to four months before receiving necessary psychiatric care and physical therapy from third-party medical providers. (*Id.*) Mr. Taylor claims that, at some point in 2020, he was forced to wait five weeks for surgery on his "untreated broken leg," leaving him "in pain" and unable to "perform any personal care." (*Id.*)

Finally, Mr. Taylor alleges that unspecified VA medical staff have "falsified, fabricated, and/or overexaggerated" certain of his "medical records," making it "difficult" for him to "advocate" for and "manage" his own healthcare. (*Id.* at 7.) Mr. Taylor alleges that VA clinicians have, among other things, misdiagnosed him as "histrionic," wrongfully accused him of "fak[ing]" his symptoms, and "egregiously maligned [him] for years as a tactic to discount [his] credibility and cover up things the VA continues to do." (*Id.*) Mr. Taylor laments that he has been "repeatedly gaslighted in every sense from VA leadership." (*Id.*) Plaintiff alleges that the VA's complained-of actions towards him have been "retaliatory" in nature, due to his "attempts to hold VA employees accountable." (*Id.*)

## II.  The Procedural History

Based on these allegations, on March 25, 2021, Mr. Taylor commenced this FTCA action against the United States. In his Complaint, Mr. Taylor asserts four claims for relief: (1) medical negligence; (2) intentional infliction of emotional distress ["IIED"]; (3) negligence; and (4)

3

defamation. (Compl. 4-7.) On July 16, 2021, the United States responded to Mr. Taylor's allegations against it by filing a motion to dismiss the Complaint, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. 1.) Defendant argues, specifically, that Plaintiff cannot proceed with his medical negligence, because he has failed to file a Colorado certificate of expert review, and because he "does not plausibly allege a breach of the duty of care applicable to physicians under Colorado law." (*Id.* at 3-7.) The United States moves to dismiss the remainder of Mr. Taylor's claims on the grounds that they are inadequately pleaded. (*Id.* at 7-13.)

## STANDARDS OF REVIEW

### I. Legal Standard for Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*,

4

927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted). "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint,

central to the plaintiff's claims, and not challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

## ANALYSIS

### I. The Medical Negligence Claim

The United States argues, first, that Mr. Taylor's medical negligence claim must be dismissed, based on his admitted failure to file a certificate of expert review, in accordance with Colorado law. (Mot. 4-6; *see* Resp. 1.) Section 13-20-602 of the Colorado Revised Statutes provides, in relevant part:

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party. . . within sixty days after service of the complaint, . . . unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a). The certificate of review must demonstrate that the plaintiff has consulted a professional "who has expertise in the area of the alleged negligent conduct," and that the professional has reviewed the known facts, records, and other materials deemed relevant to the allegations, and "based on the review of such facts, has concluded that the filing of the claim . . . does not lack substantial justification[.]" *Id.* at § 13-20-602(3)(a). "If the court determines that a certificate is required, and the plaintiff fails to file, such failure requires dismissal of the complaint." *Sherman v. Klenke*, 653 F. App'x 580, 595 (10th Cir. 2016) (citing C.R.S. § 13-20-602(4)).

"The certificate of review requirement is not jurisdictional; rather, it acts as an affirmative defense that may be waived." *Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019

WL 588192, at *3 (D. Colo. Feb. 13, 2019) (citing *Miller v. Rowtech, LLC*, 3 P.3d 492, 494-95 (Colo. App. 2000)); *see also* C.R.S. § 13-20-602(b)(2) ("[T]he defense may move the court for an order requiring filing of such a certificate."). The certificate of review serves to establish a *prima facie* case of negligence, and to ensure that a defendant does not expend "unnecessary time and costs in defending professional negligence claims," by "weed[ing] out frivolous claims at an early stage of the judicial process." *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002); *Badis v. Martinez*, 819 P.2d 551, 554 (Colo. App. 1991), *rev'd on other grounds*, 842 P.2d 245 (Colo. 1992).

Colorado's certificate of review requirement applies to "professional negligence claims brought against the United States under the FTCA." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004). And, this requirement applies irrespective of whether a plaintiff is represented by counsel. *Sherman*, 653 F. App'x at 594. However, a certificate of review need only be filed in an FTCA action if: "(1) the plaintiff brings a claim of alleged professional negligence against a licensed professional, *and* (2) expert testimony is necessary to substantiate the claim." *Id.* at 595 (emphasis in original).

In this case, there is no question that Colorado's certificate of review requirement applies to Plaintiff's first cause of action. Specifically, Plaintiff alleges that a licensed physician improperly prescribed him with medication that ultimately rendered him permanently impotent. (Compl. 4.) Given that these allegations sound in professional negligence, and the events are said to have occurred in Colorado, the first element of § 13-20-602 is satisfied.

As to the second element, the court agrees with the United States that the resolution of Mr. Taylor's medical negligence claim will require expert testimony. Specifically, to prevail on

8

that claim, Mr. Taylor must show that the physician who prescribed him with Lexapro breached a medical standard of care, *i.e.,* the duties owed to Mr. Taylor with respect to the treatment of his psychiatric symptoms. As the United States correctly points out, the resolution of this claim will require the fact-finder to reach conclusions regarding the efficacy of, and Mr. Taylor's need for, the Lexapro medication, as compared to the side effects he claims to have suffered. (*See* Mot. 5-6.) This will require expert testimony, most notably regarding the pharmacological effects and side effects of the Lexapro medication at issue. Such matters are not "within the ambit of common knowledge or experience of ordinary persons." *Gallardo v. United States*, 752 F.3d 865, 871 (10th Cir. 2014) (quoting *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990)) ("[M]atters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of lay knowledge and experience."); *see Williams v. Boyle*, 72 P.3d 392, 398 (Colo. App. 2003) (concluding that expert testimony was required for a medical negligence claim, where the plaintiff alleged that her kidney damage "was caused by the prescribed medication"); *Smith v. Trujillo*, No. 1:20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *11 (D. Colo. Mar. 26, 2021) (concluding that expert testimony was required, where the medical negligence claim hinged on whether a physician's denial of an MRI breached a duty of care owed to the plaintiff), *report and recommendation adopted by* 2021 WL 1608829, at *4 (D. Colo. Apr. 26, 2021).

Because expert testimony is necessary to substantiate Plaintiff's FTCA claim for medical negligence, his admitted failure to file a certificate of review bars him from proceeding with that claim. *See* Colo. Rev. Stat. § 13-20-602(4) ("The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint[.]"); *Cestnik v. Fed.*

*Bureau of Prisons*, 84 F. App'x 51, 53 (10th Cir. 2003) (affirming the dismissal of an FTCA medical negligence claim for failure to file a certificate of review in accordance with Colorado law). It is, therefore, recommended that Plaintiff's first cause of action be dismissed without prejudice, pursuant to Colo. Rev. Stat. § 13-20-602, for failure to file a certificate of review. *See Coleman v. United States*, 803 F. App'x 209, 214 (10th Cir. 2020) (observing that dismissal under the Colorado certificate statute should be without prejudice "unless (1) the failure to file a required certificate of review was the result of willful misconduct or gross negligence or (2) caused substantial prejudice").

## II.  The IIED Claim

Defendant next moves to dismiss Plaintiff's IIED claim, under Rule 12(b)(6), for failure to satisfy the requisite minimum pleading standard. (Mot. 7-9.) To state a plausible claim for IIED under Colorado law, a plaintiff must allege the following: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994)). "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (citing *Coors Brewing*, 978 P.2d at 666). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting

Restatement (Second) of Torts § 46 (1965)). "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper*, 877 P.2d at 883.

Here, the Complaint alleges that a VA nurse approached Mr. Taylor in a public lobby, and proceeded to discuss the details of his erectile dysfunction medication "at full volume in front of everyone in the lobby." (Compl. 5.) However, Plaintiff provides insufficient context for these allegations, such as how many other people, if any, were in the lobby at the time these events occurred, whether any person actually overheard the conversation at issue, or even what specifically the VA nurse said. Without such additional factual allegations, Mr. Taylor's IIED claim fails. *See Obduskey v. Fargo*, No. 15-cv-01734-RBJ, 2016 WL 4091174, at *6 (D. Colo. July 19, 2016) (dismissing an IIED claim, where the plaintiff "fail[ed] to identify conduct that satisfies this tort's high bar"). Accordingly, the dismissal of this, under Rule 12(b)(6), is warranted.[1]

### III. The Negligence Claim

Mr. Taylor also seeks to impose liability against the United States for "[p]ain and suffering/negligence," arising from alleged delays in the VA's authorization of his medical

---

[1] To the extent that Mr. Taylor is, instead, attempting to assert a claim for negligent infliction of emotional distress, he has failed to do so. In Colorado, to state a claim for negligent infliction of emotional distress, "a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011). Here, Mr. Taylor alleges no facts from which it can be inferred that he feared for his physical safety, either while interacting with the VA nurse, or while being removed from the building.

treatment.  (Compl. 6.)  Under Colorado law, "[t]o recover on a negligence claim, a plaintiff must establish that: (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury."  *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017).  The United States contends that Mr. Taylor has failed to identify "any legal duty on the part of the VA to authorize third-party health services within any particular timeframe."  (Mot. 10.)  This court agrees.

"A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit."  *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005).  "Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is not a question of fact but is a question of law to be determined by the Court."  *Id.* at 448.  Here, Mr. Taylor alleges that the VA repeatedly provided him with untimely and inadequate medical care "either from neglect or the mishandling of authorizations for provisions."  (Compl. 6.)  However, Plaintiff makes no allegations concerning a legal duty of care owed to him in connection with this claim.

In his Response, Mr. Taylor references the Veterans Access, Choice, and Accountability Act of 2014, 38 U.S.C. § 1701 *et seq.*, which established a program to furnish hospital care, medical services, and extended care services to covered veterans through non-VA healthcare providers.  (Resp. 4); *see* 38 U.S.C. § 1703(a)(1); 38 C.F.R. § 17.1500(b).  The so-called "Veterans Community Care Program" obligates the VA to, among other things, "ensur[e] the scheduling of medical appointments [to covered veterans] in a timely manner."  38 U.S.C. § 1703(a)(2)(A).  However, the extent that Mr. Taylor is arguing that the VA committed the tort of negligence when it breached its duties under the Veterans Community Care Program, these

allegations are not found within the Complaint. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("[I]n determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."); *Ramsey v. Sw. Corr. Med. Grp., Inc.*, No. 18-cv-1845-WJM-KLM, 2019 WL 3252181, at *10 (D. Colo. Jul. 19, 2019) ("[A] plaintiff cannot avoid dismissal by adding new allegations in a response brief[.]").  And, even assuming they were, the VA's purported breach of a duty created by federal statute, alone, cannot support a claim for relief under the FTCA.  Specifically, "the FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law." *United States v. Agronics, Inc.*, 164 F.3d 1343, 1346 (10th Cir. 1999).  Thus, "where a negligence claim is based on violation of a federal statute or regulation, no claim will lie under the FTCA in the absence of some other duty under the applicable state law." *Klepper v. City of Milford, Kan.*, 825 F.2d 1440, 1448 (10th Cir. 1987); *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) (observing that the FTCA makes the United States liable for negligence only "in the same manner and to the same extent as a private individual under like circumstances . . . in accordance with the law of the place where the act or omission occurred").  "Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons." *Ayala*, 49 F.3d at 610; *see Agronics*, 164 F.3d at 1345 (making clear that the FTCA "does not apply" where "the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty in the conduct of its own affairs") (alteration omitted).

In this case, Mr. Taylor has failed to identify any legal duty of care that the VA owed under Colorado law with respect to its authorization of third-party healthcare services. Without such allegations, Mr. Taylor cannot proceed with his negligence claim. *See Mecca v. United States*, 389 F. App'x 775, 779 (10th Cir. 2010) (unpublished) ("Dr. Mecca's reliance on a federal regulation, without any analogous state law duty, failed to bring the first seven claims within the scope of the FTCA's waiver of sovereign immunity[.]"); *see also A Just Cause v. United States*, 45 F. Supp. 3d 1258, 1272-74 (C. Colo. 2014) (dismissing an FTCA claim for negligence as inadequately pleaded, where the plaintiff alleged that a federal court reporter breached her duty under the Court Reporters Act, 28 U.S.C. § 753(b), to record all court proceedings verbatim, but failed to allege any corresponding "breach of duty established by Colorado law"). Accordingly, Mr. Taylor's third claim for relief should also be dismissed.

## IV.  The Defamation Claim

As to his fourth claim, Plaintiff alleges that "many entries" within his medical records "have been conveniently falsified, fabricated, and/or overexaggerated." (Compl. 7.) Plaintiff further alleges that he has been "egregiously maligned" and "repeatedly gaslighted in every sense from VA leadership," and that various "[d]amaging words" have been either spoken or written about his medical conditions by unspecified "VA employees." (*Id.*) The United States argues that these allegations are insufficient to show Mr. Taylor's entitlement to relief under Colorado law. (Mot. 10-13.) Once again, the court agrees.

Mr. Taylor describes his fourth claim as one for "libel/slander." (Compl. 7.) In Colorado, slander and libel are both forms of defamation. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.5 (Colo. 1994). "Defamation is a communication that holds an individual up to contempt

or ridicule thereby causing him to incur injury or damage." *Id.* at 1297. "Libel is usually a written communication while slander is generally an oral communication." *Id.* at 1297 n.5. The required elements of a defamation claim are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by publication." *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009) (citations omitted).

Here, Mr. Taylor's defamation claim fails on several grounds. First and foremost, to the extent that Mr. Taylor complains of "[d]amaging words" and "falsified, fabricated, and/or overexaggerated" statements made by certain "VA employees," he provides insufficient context for these allegations. Specifically, Plaintiff does not allege when these purportedly defamatory statements were made, who made them, or what the statements *specifically* concerned. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that a complaint must, at minimum, "explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's actions harmed him []; and, what specific legal right the plaintiff believes the defendant violated"); *Rader v. Elec. Payment Sys., LLC*, No. 11-cv-01482-MSK-CBS, 2012 WL 4336175, at *6-7 (D. Colo. Sept. 21, 2012) (holding a libel counterclaim to be inadequately pleaded, where the defendant did not "quote or describe the offending statement in any meaningful way"); *see also Ross v. Gallegos*, No. 13-cv-00831-REB-KLM, 2013 WL 6283910, at *5 (D. Colo. Dec. 3, 2013) ("Because Plaintiff's allegations are naked and devoid of necessary factual enhancement (such as time, place, and even person), and lack legally cognizable claims, the Court concludes that Plaintiff fails to meet the standard set forth in Rule

12(b)(6)."). Further, Mr. Taylor has not identified any person outside of the VA to whom the statements at issue were communicated. *See Lucero v. United States*, 849 F. App'x 718, 721 (10th Cir. 2021) (unpublished) (affirming the dismissal of a veteran's FTCA defamation claim, where there were no allegations that the VA physician "shared the allegedly defamatory progress notes with anyone outside the VA"). Accordingly, Plaintiff's fourth claim should be dismissed, as well.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "Motion to Dismiss" (Doc. No. 12) be **GRANTED**. Specifically, Plaintiff's medical negligence claim should be dismissed, pursuant to Colo. Rev. Stat. § 13-20-602, for the failure to file a certificate of review. The remaining claims should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. It is further

**RECOMMENDED** that this case be **DISMISSED**.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of January, 2022.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge